UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARNULFO SILVA,

    Petitioner,

v.                                                     Case No.  8:06-cv-2257-T-17TBM

SECRETARY, DEPARTMENT OF CORRECTIONS,

    Respondent.

_____

**ORDER**

THIS CAUSE was initiated upon the filing of a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus (hereinafter Petition).  Petitioner Silva challenges his convictions for lewd and lascivious molestation of a chiod arising out of the Thirteenth Judicial Circuit, Hillsborough County, Florida, in case no. 01-12691.  A review of the record demonstrates that, for the following reasons, the petition must be denied.

Background

Silva was found guilty after a jury trial held October 21-23, 2002, of two counts of lewd or lascivious molestation as charged in case no. 01-12691.[1]  He was

---

[1] Prior to trial, he had unsuccessfully pursued a certiorari petition following the denial of his motion seeking to disqualify the state attorney's office from prosecuting his case. The petition in case no. 2D02-4175 was dismissed on October 8, 2002. *Silva v. State*, 829 So. 2d 220 (Fla. 2nd DCA 2002)[table].

adjudicated guilty in accordance with the verdict on count one and sentenced to 30 years prison. The second count was dismissed.[2]

Silva appealed the trial-based judgment. On January 9, 2004, the state district court of appeal per curiam affirmed without written decision in case no. 2D03-1467. *Silva v. State*, 869 So. 2d 556 (Fla. 2nd DCA 2004)[table]. No rehearing was sought; nor did Silva pursue certiorari review in the Supreme Court.

Silva filed a pro se motion for postconviction relief dated June 26, 2004, under Florida Rule of Criminal Procedure 3.850. By non-final order rendered September 13, 2005, the postconviction court directed the State to respond. Following the state's response, a final denial was rendered February 7, 2006, in which the postconviction court adopted the state's response. Silva appealed the summary denial, and on September 8, 2006, the state district court of appeal per curiam affirmed in case no. 2D06-1618. *Silva v. State*, 940 So. 2d 433 (Fla. 2nd DCA 2006)[table]. Following denial of rehearing, the mandate issued November 3, 2006.  Silva timely filed a pro se 28 U.S.C. § 2254 petition dated December 5, 2006.

## STANDARD OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless

---

[2] He was also sentenced to a concurrent five-year prison terms of two counts of felony battery, to which he had entered a negotiated guilty plea in his best interest on March 3, 2003, in case no. 01-12690.

they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Discussion

The present federal petition is comprised of six claims in which Silva contends his trial counsel rendered ineffective assistance.

In order to show a violation of the Sixth Amendment right to counsel, Silva must satisfy the two-pronged inquiry of *Strickland v. Washington*, 466 U.S. 668, 687 (1984). *See Bell v. Cone*, 535 U.S. 685, 698 (2002) (courts should apply *Strickland* to claims that counsel failed to satisfy constitutional requirements at specific points). According to *Strickland*, a defendant must show counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness"; and such prejudiced him; that is, there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88; *see also Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000). The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. *See Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). "[T]he cases in which habeas petitioners can properly prevail on the

ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).

A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). This judicial scrutiny is "highly deferential." *Id.* A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689-90; *see also Bell*, 535 U.S. at 698. The inquiry into whether a lawyer has provided effective assistance is an objective one -- a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer took. *See Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000), *cert. denied*, 531 U.S. 1204 (2001). An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of effective representation. Where the record is incomplete or unclear about counsel's actions, it will be presumed that he did what he should have done, and that he exercised reasonable professional judgment. *Id.* at 1314 n.15. Thus, as *Chandler* makes clear, the presumption afforded counsel's performance "is not . . . that the particular defense lawyer in reality focused or and, then, deliberately decided to do or not to do a specific act." *Id.* Rather, the presumption is "that what the particular defense lawyer did at trial -- for example, what witnesses he presented or did not present -- were acts that some reasonable lawyer might do." *Id.* Every effort should be

made to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's perspective at the time." Id. at 1317.

In applying the AEDPA standard to ineffective assistance of counsel claims, the federal court's focus is on whether the state decision can be viewed as objectively reasonable. *See Wellington v. Moore*, 314 F.3d 1256, 1261 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." (internal quotation omitted), *cert. denied*, 535 U.S. 1107 (2002). The Supreme Court reiterated the highly deferential standard for evaluating state-court rulings in *Woodford v. Visciotti*, 537 U.S. 19 (2002):

> Under § 2254(d)'s "unreasonable application" clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly. *See Bell v. Cone*, 535 U.S. 685, 698-699, 122 S.Ct.1843, 152 L.Ed.2d 914 (2002); *Williams, supra*, at 411, 120 S.Ct. 1495. Rather, it is the habeas applicant's burden to show that the state court applied Strickland [*10] to the facts of his case in an objectively unreasonable manner. An "unreasonable application of federal law is different from an incorrect application of federal law."

]
537 U.S. at 24-25 (reversing grant of habeas relief to a state prisoner under death sentence, finding the circuit court ultimately substituted its own judgment for that of the state court, in contravention of 28 U.S.C. § 2254(d)) (citation omitted).

In Silva's case, the state district court affirmed the final denial of his ground without written analysis after affording him an additional probe. The silent decision is entitled to the same deference under the AEDPA standards of review as if the appellate court had entered written findings. *See Wright v. Sec. of Dept. of Corr.*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied*, 538 U.S. 906 (2003). Fla. R. Crim. P. 3.300(a)

provides the prospective jurors shall be sworn collectively or individually, as the court may decide. Pursuant to the rule, prospective jurors should swear or affirm they will answer truthfully all questions directed to them.

### Ground One

The thrust of ground one is that trial counsel was remiss for not objecting on grounds of lack of administration of an oath to prospective jurors pursuant to Florida Rule of Criminal Procedure 3.300.[3] In summarily denying his claim of proposed omission, the postconviction court adopted the state's response in which the prosecutor observed that a court clerk was permitted under state law to administer the oath. *See e.g., Martin v. State*, 898 So.2d 1036, 1037 (Fla. 5th DCA) (stating "it is a common practice to obtain oaths from the venire outside the courtroom"), *rev. denied*, 911 So. 2d 98 (Fla. 2005).

It is objectively reasonable to dispose of Silva's claim on *Strickland*'s deficiency prong. Silva does not overcome the strong presumption his trial counsel's decisions regarding the administration of the preliminary oath were in the exercise of professional judgment. *Strickland*, 466 U.S. at 690. Silva, in his rule 3.850 motion asserted the record was "cold" as to any oath being administered prior to commencement of voir dire; however, Silva did not specifically allege, as a threshold matter, the oath was not actually administered to prospective jurors prior to voir dire.[4] In light of the common

---

[3] Fla. R. Crim. P. 3.300(a) provides the prospective jurors shall be sworn collectively or individually, as the court may decide. Pursuant to the rule, prospective jurors should swear or affirm they will answer truthfully all questions directed to them.

[4] That the proceedings in the courtroom may not include the administration of the oath does not establish the oath was not administered to prospective jurors before commencement of voir dire in the jury pool room.

practice of taking jurors' oaths outside of the courtroom, "it is pure speculation on [Petitioner's] part to allege that they were never sworn." *Martin, supra*, at 1037. (footnote omitted).

Alternatively, this ground can be disposed of on the *Strickland*'s prejudice prong. Silva is unable to show the preliminary oath requirement need be accomplished on the record under state law. *See Smith v. State*, 866 So. 2d 51 (Fla. 2004) [(where there is simply no record one way or the other, no error, let alone fundamental error, has been shown)(citing *United States v. Pinero*, 948 F.2d 698, 700 (11th Cir. 1991)(concluding mere absence of record does not establish jury was unsworn; thus, challenge involved issue of fact not appropriately raised on appeal)]; *see also, Lott v. State*, 826 So. 2d 457, 458 (Fla. 1st DCA 2002)(If jurors have taken the oath in the jury assembly room, they need not take it again in the courtroom), *rev. denied*, 845 So. 2d 891 (Fla. 2003).

Moreover, Silva did not provide a sufficient basis upon which to conclude there was any reasonable probability of a different outcome had counsel raised the proposed objection or argument. *E.g., Lott*, 826 So. 2d at 458 (concluding defendant was unable to show prejudice arising from his counsel's silence in the face of failure to administer the oath; he did not claim, for example, that unsworn juror provided false information and defendant would likely have prevailed at trial with different juror). Accordingly, the state decision resulted in a reasonable application of either of *Strickland*'s prongs.

Ground Two

Silva claims his trial counsel had a duty to preclude alleged systematic exclusion from his jury of Hispanic males. In his supporting facts, he claims the prosecution "systematically" excluded "an Hispanic male." However, in his rule 3.850 motion, Silva charged his counsel was ineffective for not precluding purported systematic exclusion of Hispanic and male jurors from serving on his jury, save one male juror.[5] The allegations appear dissimilar, in that he seems to be complaining in his federal petition of the removal of only one potential juror.

The Court construes this ground as raising only the assertions he presented in his rule 3.850 motion. Although Silva referred to the right to be judged by a fair cross-section of the community, Silva's rule 3.850 motion did not specifically fault his counsel for not objecting on grounds of a violation of the Sixth Amendment guarantee of a criminal defendant to an impartial jury drawn from a fair cross-section of the community. *Taylor v. Louisiana*, 419 U.S. 522 (1985). Rather, his underlying claim was premised on the Equal Protection Clause of the Fourteenth Amendment, the basis for *Batson v. Kentucky*, 476 U.S. 79, 85 (1986), in which the Supreme Court held "purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection, and exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure. *Id.* 476 U.S. at 86.

---

[5] The state's response to Silva's rule 3.850 motion relied, among other things, on state law foreclosing collateral litigation of a substantive issue which was not raised at trial and on appeal. Although Silva's ineffectiveness-of-counsel claim was cognizable, his underlying claim of systematic exclusion of jurors based on ethnicity, whether framed in constitutional or state law terms, is procedurally barred because it could have, if at all, been raised at trial and on appeal.

Under the three-part *Batson* test, the defendant must first establish a prima facie case of discriminatory intent on the part of the prosecution. A prima facie case is constructed by a showing by a defendant that he is a member of a cognizable racial group and the relevant circumstances raise an inference the prosecution has exercised peremptory challenges to remove from the venire members of his race. *Batson,* 476 U.S. at 96.[6]  Once a court has determined a prima facie case of discrimination has been established, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97.  If the state clears this hurdle, the trial court has the responsibility to determine whether the defendant has established purposeful discrimination. *Id.* at 98.

Silva, in his rule 3.850 motion, did not complain of the exclusion of a juror based on race; rather, he complained of exclusion of male jurors whom he characterized as Hispanic. In *State v. Alen*, 616 So. 2d 452 (Fla. 1993), the Florida Supreme Court recognized Hispanics as a cognizable ethnic group. The *Alen* decision indicated at the time neither the United States Supreme Court nor Florida law had clearly defined Hispanics as a cognizable class. *See id.* at 454-55.[7] Even construing Supreme Court

---

[6] The requirement that a criminal defendant raising a *Batson* challenge need show commonality of race with excluded jurors was eliminated by the Supreme Court in *Powers v. Ohio*, 499 U.S. 400 (1991).

[7] In *Hernandez v. Texas*, 347 U.S. 475 (1954), the question before the Supreme Court was whether persons of "Mexican" descent were systematically excluded from the jury venires in Jackson County, Texas. *Id.* at 476-77. In deciding the case, the Supreme Court recognized persons of Mexican descent as a cognizable class in the community. *Id.* at 479-80.  In *Hernandez*, 500 U.S. 352 (1991), the Court found no error in the New York court's application of *Batson* in granting the prosecutor's peremptory challenges excluding potential jurors where specific responses and the demeanor of the two individuals during voir dire caused the prosecutor to doubt their ability to defer to the official translation of Spanish-language testimony.

In *Keyes v. Sch. Dist.*, 413 U.S. 189, 197 (1973), a school desegregation case, the Supreme Court held that Hispanics constitute an identifiable class for purposes of the Fourteenth Amendment. However, Keyes did not clearly establish that Latin Americans were a constitutionally cognizable group for the selection of grand and petit juries. *See Valle v. Sec'y for the Dep't of Corr.*, 2007 U.S. App. LEXIS 3470 (11th Cir. Feb. 16, 2007) (denial of petition for rehearing) (Judge Wilson concurring).

precedent at the time of the state decision in Silva's case as clearly establishing "Hispanics" are a cognizable class for Fourteenth Amendment protection, nonetheless, the state decision is governed by *Strickland*, as Silva's substantive claim was brought in his rule 3.850 motion as one of proposed omission of counsel.

Silva's complaint that Hispanic males were excluded from his jury establishes no deficiency in counsel's performance. Mere cognizance of ethnic identity does not necessarily establish, or even imply, a discriminatory intent in the prosecution's use of its peremptory challenges. In making out a prima facie case, the defendant must point to more than the bare fact of the removal of certain venire persons. *See United States v. Allison,* 908 F. 2d 1531, 1538 (11th Cir. 1990); *see also Murphy v. Dretke*, 416 F.3d 427, 438 (5th Cir. 2005)(observing "stark numbers" of venire-persons peremptorily struck by the state cannot alone establish racial discrimination and affirming denial of petition); *Medellin v. Dretke,* 371 F.3d 270, 278-79 (5th Cir. 2004)(rejecting argument that use of six of thirteen peremptory strikes to excuse minorities "presents statistical evidence of discrimination" and stating that the "number of strikes used to excuse minority . . . pool members is irrelevant on its own"); *Soria v. Johnson*, 207 F.3d 232, 239 (5th Cir. 2000)(fact that "two Hispanics were peremptorily challenged" held insufficient to establish "a prima facie case of purposeful discrimination during voir dire").

In *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127 (1994), the Supreme Court held the Equal Protection Clause prohibits discrimination in jury selection on the basis of gender. In Silva's rule 3.850 attack, Silva did not lay out any challenge to a particular

juror and did not set forth a sufficient basis on which to conclude that not one reasonably competent attorney could have decided the prosecution's challenges were based on gender-neutral, as well as ethnic-neutral reasons which were not pretextual. One such attorney could also conclude that not having a sufficient basis to conclude the first prong of the *Batson* test could be met, prongs two and three become inapplicable and no Batson violation could be found.

Silva asserts males comprised 50% and Hispanics 18% of the population in the county where he stands convicted. However, there is no constitutional requirement of ethnic/gender proportional strikes. *See Batson*, 476 U.S. at 86 n.6. (noting Court has not held the Sixth Amendment requires that "petit juries actually chosen must mirror the community and reflect the various distinctive groups in the population).

Even if, arguendo, Silva's rule 3.850 motion is construed to fault counsel for not pressing a Sixth Amendment deprivation regarding the fair cross-section requirement, Silva's posture on his ground does not improve upon AEDPA review of the state decision on his claim of proposed omission. Silva does not point to facts representative of the jury-eligible population. At least one reasonably competent attorney could conclude that any claim of under-representation would still require an accounting of such factors as citizenship, prior felony conviction, as well as the ability to speak and understand English. In his rule 3.850 attack, Silva did not present a sufficient basis for concluding counsel overlooked any evidence which would support a viable claim that disparity was due to the systematic exclusion of Hispanics/males in the jury selection process.

Alternatively, this ground can be denied for Silva's failure to set forth a sufficient basis to conclude there was any reasonable probability of a different outcome had counsel objected as proposed. Silva does not set forth with specificity any pattern of strikes against venire members based on ethnicity or gender, in the questions or statements during voir dire or in exercising challenges, that would suggest a discriminatory purpose. *Batson,* 476 U.S. at 97. Because Silva did not set forth a sufficient basis to conclude that a prima facie case of discrimination could be made under *Batson*, the state court was not compelled to ask the prosecution to articulate ethnic/gender neutral reasons for striking any potential juror. Moreover, Silva does not set forth facts, which, if shown, would have satisfied his ultimate burden of persuasion as an opponent of the strike. *Purkett v. Elem*, 514 U.S. 765, 768 (1995) (per curiam).

Nor does Silva present facts which would show that even if counsel had promoted there was a Sixth Amendment deprivation in the voir dire challenges, the state court would have been obliged to find there was a prima facie violation of the fair-cross-section requirement. In order to make out a prima facie case, the defendant must show: (1) the group alleged to be excluded is a 'distinctive' group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this under-representation is due to the systematic exclusion of the group in the jury selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979).  Silva does not show that his counsel overlooked a viable basis for finding he was deprived of an impartial jury drawn from a fair cross-section of the community.

In short, Silva cannot demonstrate actual prejudice from counsel's forgoing an Equal Protection claim or a Sixth Amendment based objection to the prosecutor's challenges before his jury was empaneled.[8] In addition, given that the state district court in silently affirming did not find meritorious Silva's state-law-based arguments, he is unable to show there was any reasonable probability of a different outcome had counsel objected on the state law grounds advanced by Silva in his rule 3.850 motion. The state decision resulted in a reasonable application of *Strickland*'s prejudice prong, and this result obtains however his underlying claim is construed regarding the selection of his jury panel.

## Ground Three

Silva faults his counsel for not investigating and calling individuals, Carlos DeJesus and Jose Figuroa, on behalf of the defense. In denying relief on his ground, the postconviction court incorporated the state's response in which the state pointed out Silva did not lay out what their testimony would have been; nor did he show prejudice from the claimed omission.

Silva does not mention other individuals to whom he referred in his rule 3.850 motion, and it does not appear he is raising other allegations. But even if he were, the posture of his ground does not warrant relief. With respect to his reliance on an affidavit of Stephanie Silva, the state observed this individual was listed by trial counsel, deposed by the prosecution, and that she testified at trial on behalf of the defense. With regard to three other individuals, Silva faulted his counsel for not utilizing -- Bonnie

---

[8] *E.g., Melenciano v. Walsh*, 2005 U.S. Dist. LEXIS 5719 (D. N.Y. 2005)(failure to pursue meritless *Batson* challenge cannot be the foundation for claim of ineffective assistance).

Herndon, Rosemary Krul, Ethel Chaney -- the state asserted that their testimony would have been comprised of inadmissible character evidence under Florida evidentiary rules.

As to complaints regarding each of the proposed witnesses, the state decision resulted in an objectively reasonable application of *Strickland*'s deficiency prong. Silva failed to set forth a sufficient basis for concluding not one objectively reasonably competent lawyer would have taken the action his lawyer took with regard to each of the proposed witnesses. *Chandler*, 218 F.3d at 1315.

Silva did not state what testimony Carlos DeJesus and Jose Figuroa would have been prepared to give at the time. Nor did he suggest counsel was unaware of their information. It is objectively reasonable to conclude Silva's conclusory allegations did not set forth a basis for concluding trial counsel's foregoing the proposed witnesses fell outside the wide range of reasonable professional assistance. *Strickland,* 466 U.S. at 689.

Moreover, he did not show that not one reasonably competent attorney under the circumstances could have concluded testimony from Herndon, Krul, and/or Chaney would have comprised no more than lay opinion or specific act character evidence which would run afoul of the state's predicate requirements for admission thereof.

It is not necessary to address the deficiency prong because the ground can be disposed of under *Strickland*'s prejudice prong. *Strickland*, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one.").

The mere fact that other witnesses might have been available or that other testimony might have be elicited from those who testified is not a sufficient ground to prove ineffective assistance. *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987), *cert. denied*, 487 U.S. 1241 (1988).

Silva's claim is mere speculation. In his rule 3.850 motion, Silva did not set forth a basis showing, even if proven, that the proposed witnesses would have offered admissible testimony undercutting or calling into question in material regard the state's evidence of his guilt. It is objectively reasonable to conclude Silva does not show that had counsel utilized the omitted witnesses, there was any reasonable probability of a different outcome at trial. The silent affirmance of the postconviction court's ruling resulted in a reasonable application of *Strickland*, as well as a reasonable determination of the facts in light of the evidence.

## Ground Four

Silva charges the trial court did not make an adequate determination of the competency of the child-victim. He charges counsel with a failure to object or move for mistrial on such ground. The state's response adopted by the postconviction court in denying Silva's claim of proposed omission reflects that the required inquiry under state law was made, and counsel objected to the witness competency determination. The underlying claim Silva faulted counsel for not raising was not a constitutional claim; it was a claim based on state law. Where, as here, a state court's adjudication represents the resolution of an underlying state law issue, the Court owes a very high degree of deference to that determination. *See Alvord v. Wainwright*, 725 F.2d 1282,

1291 (11th Cir. 1984), *modified,* 731 F.2d 1486, *cert. denied*, 469 U.S. 956 (1984). It is not the province of a federal court to reexamine state-court determinations on state-law questions. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). State courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See Agan v. Vaughn,* 119 F.3d 1538, 1549 (11th Cir. 1997). Given that the postconviction court did not accept Silva's underlying state law arguments, he cannot demonstrate any deficiency in counsel's foregoing these arguments.

Furthermore, it is objectively reasonable to deny his ground under *Strickland'*s prejudice prong without addressing the deficiency prong. Silva's rule 3.850 motion did not set forth a basis which would suffice to conclude the child did not understand the duty to tell the truth or not to tell a lie. Section § 90.605(2), Florida Statutes. Moreover, Silva does not overcome the presumption of correctness attendant the state court's findings in allowing the child to testify. 28 U.S.C. § 2254(e)(1). Not laying out an omitted argument would have resulted in a disqualification of the child as a witness, Silva in his rule 3.850 motion, failed to demonstrate there was no reasonable probability of a different outcome had counsel advocated more or differently with regard to the witness competency of the child.

### Ground Five

Silva faults his counsel for not adequately performing in his endeavor to obtain disqualification of the state attorney's office from the prosecution of his case. The state's response adopted by the postconviction court, in rejecting Silva's proposed claim of omission, pointed out the various efforts of counsel to secure disqualification

of the prosecutor's office, both before and at trial, as well as through a pretrial prohibition application to the state district court. Silva's rule 3.850 attack pointed to state law, and given that the postconviction court did not find meritorious his state law arguments, Silva is unable to show there was any deficiency in counsel's foregoing the state-law based arguments advanced collaterally.

The ground can be disposed of on *Strickland*'s prejudice prong without addressing the deficiency prong. It is objectively reasonable to conclude Silva did not show that had his counsel advocated differently, the state court(s) would have been obliged to disqualify the prosecutor's office in his case. As the state pointed out in Silva's direct appeal in which he raised a substantive claim of trial court error in denial of disqualification of the entire state attorney's office, the attorney who represented him at his arraignment, and who became a prosecutor, did not exchange confidential information and did not assist the prosecution in his case. It follows he cannot demonstrate there was any reasonable probability of a different outcome had his successor trial counsel argued differently with regard to the attempted disqualification of the prosecutor's office. The state decision resulted in an objectively reasonable application of *Strickland* under either prong.

### Ground Six

Silva faults his counsel for not objecting to introduction of testimony as to acts not charged in case no. 01- 12691, the state judgment which is under current attack by the federal petition. The thrust of his underlying claim, as in his rule 3.850 motion,

-17-

is that the testimony ran afoul of the state's jurisprudence concerning the admissibility of other-act evidence.[9]

The state's response adopted by the postconviction court countered that counsel had filed a motion in limine and subsequent to the adverse order, obtained a limiting instruction on the subject evidence at trial. Silva does not overcome the strong presumption counsel's performance with regard to the other act evidence fell within the wide range of professional competence.

As with his other charges against counsel, Silva's ground can be denied on *Strickland*'s prejudice prong. Given that the state court did not accept his underlying state law arguments, he cannot show the trial court would have been obliged to exclude the subject testimony. In any case, it is objectively reasonable to conclude that Silva failed to show that had counsel performed differently with regard to S.B.'s testimony, there was any reasonable probability of a different outcome. Finally, Silva is now barred by 28 U.S.C. § 2254(e)(2) from seeking evidentiary development on any allegation not timely pled in state court in his rule 3.850 motion.[10]  Even if, arguendo, § 2254(e)(2) does not preclude a federal evidentiary hearing, Silva nonetheless is not automatically entitled to a hearing. It would still be appropriate to deny him a hearing if such would not assist in resolution of his claims. In order to obtain an evidentiary

---

[9] The petition confusingly refers to the testimony of S.B., who is the victim alleged in case no. 01-12691. The subject of the state's Williams rule evidence in that case concerned acts of Silva against another child, B.E., the victim in case no. 01- 12690.

[10] Any new factual assertions not pled in his rule 3.850 motion are barred by applicable time limits and the state's successive petition doctrine. If a petitioner asserts new allegations of ineffective assistance of counsel that were not timely and properly raised in state court, they may not be considered by this Court. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Tower v. Phillips*, 979 F.2d 807 (11th Cir. 1992)(federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted, unless petitioner is able to show both cause and prejudice resulting therefrom).

hearing, the petitioner must demonstrate he would be entitled to habeas relief on his claim if his factual allegations are proven. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002). This determination is circumscribed by the AEDPA's highly deferential standards. *Id.,* 279 F.3d at 960. Silva is not entitled to federal relief on this claim. His factual supporting facts, even if proven, would not establish that the state courts acted contrary to, or unreasonably applied, clearly established federal law as determined by the Supreme Court.

Accordingly, the Court orders:

That Silva's petition is denied. The Clerk is directed to enter judgment against Silva and to close this case.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue … only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322,

335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on December 10, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Arnulfo Silva